DECISION
The matter before the Court is an appeal by plaintiff Caroline Silva, d/b/a/ The Corner Galley, (the Galley) of a decision rendered by the Bristol Board of License Commissioners to levy a seven day suspension of the Galley's Class B liquor license for allegedly serving alcoholic beverages to two underage persons. Jurisdiction in this matter is pursuant to G.L. 1956 (1993 Reenactment) § 42-35-15.
 Travel/Facts
On the evening of June 5, 1999, and into the morning of June 6, 1999, Lieutenant Robert Karsch (Karsch), a Bristol Police Department veteran of nineteen years, observed leaving the Galley, two underage females who "appeared to be unsteady on their feet." (See Transcript, p. 28). Karsch engaged in "small talk" with the females to ascertain whether they were fit to operate a vehicle or if further action was necessary (See Transcript, p. 30-31). During the course of this exchange, the females indicated that they had been consuming rum and cokes inside the Galley. (See Transcript, p. 31). Thereafter, Karsch spoke with the Galley's manager, Joseph Roderick, who "emphatically denied" that the women had been drinking alcoholic beverages at the Galley. (See Transcript, p. 32, 53). Subsequently, Karsch asked the women to come to the Bristol Police Station to give witness statements. Once at Police headquarters, the two women were separated while one female gave her statement to Karsch, and the other female gave hers to Patrolman Scott McNally.[1] These signed statements contain the following exchanges:
 "Q. Please tell this officer why you are here at the Bristol Station this morning?
 A. Because I was at the Corner Gallery [sic] and I was drinking underage."
 Q. Can you tell me why you are here at the Police Station?
 A. Yes, because I went to the Corner Galley and I was drinking underage."
(Town Exhibit 1 and 2).
At a hearing on August 24, 1999 and August 25 1999, the Bristol Board of License Commissioners (the Board) heard testimony from the two underage females and the two Bristol Policemen, Lieutenant Karsch and Patrolman McNally. During the hearing, the two females recanted their witness statements and testified that they had not, in fact, been drinking at the Galley, but were drinking at one of their homes prior to coming to the Galley. In spite of this turn of events, the Board was satisfied, based upon the testimony by the Bristol policemen and the proffered evidence, that a violation did occur and that a seven day suspension of the Galley's Class B liquor license was warranted for the establishment's service of alcohol to two underage individuals. The plaintiff subsequently appealed the seven day suspension to the State Liquor Control Administration.
On February 3, 2000, this appeal was heard by the State Liquor Control Hearing Officer, (Hearing Officer). At hearing, Lieutenant Karsch and Patrolman McNally, as well as the two underage females, once again testified; the Galley's manager, Joseph Roderick, and the bartender, Joseph Roderick, Jr., also testified. During the hearing, the two underage females again testified that they lied in their statements to the police:
 "Q. . . .do you agree that when you gave these answers that evening [to the police], it was like a half hour later [from the time of being picked up in front of the Galley]?
 A. Yes.
 Q. And you did review [the witness statement]?
 A. Yes.
Q. And you did put your initials next to [each answer on the statement]?
 A. Yes.
 Q. Now, at the Town Council meeting, which was held August 24, August 25, . . . you testified that these weren't your answers.
 A. Yes, I did.
 Q. And you said basically the fact that [you] read them, signed them, initialed them and it all happened a half hour later
 A. Yes
 Q. — that you, in essence, you said you lied?
 A. Yes."
(Transcript pp. 87-88).
On or about May 31, 2000, the Hearing Officer affirmed the decision rendered by the Bristol Board of License Commissioners and made the following finding:
 "In a case that pivots on the credibility of witnesses, the Licensee's witnesses do not fare well. The undersigned specifically finds the credibility and demeanor of the Licensee's two main witnesses, [the two underage females], to be unconvincing. In contrast, the undersigned finds the testimony of [Lieutenant] Karsch and [Patrolman] McNally to be persuasive. The result is that the Department of Business Regulation affirms the Town's findings that [the two women] were served and consumed alcoholic beverages at [the. Galley] during the late evening and/or early morning hours of June 5-6."
(Hearing Officer Decision, p. 9). However, the Hearing Officer modified the sanction from a seven day suspension to a four day suspension, in maintaining consistency with a prior decision against another establishment imposed under similar circumstances. On June 2, 2000, plaintiff was notified that the Deputy Director of the Department of Business Regulations adopted the decision of the Hearing Officer. Thereafter, plaintiff filed the instant, timely appeal on July 3, 2000.
 Standard of Review
The standard of review of administrative agency appeals as set forth in G.L. § 42-35-15 provides that:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
In reviewing decisions of the State Liquor Control Administrator, this court must give due deference to the decision of the Administrator if it is based upon substantial evidence in the record. Costa v. Registry of Motor Vehicles 543 A.2d 1307, 1309 (R.I. 1988). This Court is precluded from exercising independent judgment on fact and policy and must confine itself to a review of the record to determine if legally competent evidence exists to support the decision. Environmental Scientific Corporation v. Durfee 621 A.2d 200, 208 (R.I. 1993). Legally competent evidence is defined as the presence of "some" or "any" evidence supporting the agency's findings. Sartor v. Coastal Resources Management Council, 542 A.2d 1077, 1082-83 (R.I. 1988). "If competent evidence exists in the record considered as a whole, the court is required to uphold the agency's conclusions." Id. (citing Barrington School Committee v. Rhode Island State Labor Relations Board, 608 A.2d 1126, 1138 (R.I. 1992)). The Court will reverse factual conclusions of administrative agencies only when they are completely devoid of evidentiary support contained in the record. Id. at 1083. However, the Court retains the power to review all questions of law and their applicability to the facts. Rhode Island Temps, Inc. v. Department of Labor and Training, Bd. of Review, 749 A.2d 1121, 1125 (R.I. 2000) (citing Environmental Scientific Corp. v. Durfee, 621 A.2d at 208).
 Analysis
The Galley argues that the May 31, 2000 decision rendered by the Hearing Officer was not supported by competent evidence in the record and is therefore clearly erroneous. The Galley submits that the witness statements given by the two women at the Bristol Police Department were taken under "questionable circumstances" since the "girls were scared and in unfamiliar police surroundings." The appellant further suggests that the procedures employed by the police in taking these statements was improper since the women were not Mirandaized and thus, said statements should not be relied upon by the hearing officer as competent evidence.
The Board asserts that this appeal rests upon the credibility of the witnesses and that an assessment of witness credibility is clearly within the discretion of the Hearing Officer (citing Environmental Scientific Corp. v. Durfee 621 A.2d 200 (R.I. 1993)). Therefore, the Board suggests that "[t]his Court should defer to the Hearing Officer's assessment of the credibility of the witnesses who testified in this matter."
Our Supreme Court has consistently held that a court must not substitute its judgment for that of the agency in regard to the credibility of the witnesses or the weight of the evidence concerning questions of fact. Rhode Island Public Telecommunications Authority v. Rhode Island State Labor Relations Board 650 A.2d 479, 485 (R.I. 1994); Environmental Scientific Corp. v. Durfee 621 A.2d 200, 208 (R.I. 1993); Liberty Mutual Insurance Co. v. Janes 586 A.2d 536, 537, (R.I. 1991); Costa v. Registrar of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission, 509 A.2d 453, 458 (R.I. 1986). (Emphasis added). In the instant matter, the crux of the Galley's appeal rests upon whether the two underage females' testimony at both hearings was, in fact, credible. Clearly, this is a question that cannot be answered by this reviewing court and must be deferred to the hearing officer at the time of the proceeding. The Hearing Officer was presented with conflicting testimony from the two underage females and the Bristol policemen with respect to the events that occurred on the night of June 5, 1999 and the morning of June 6, 1999. After sifting through the evidence and selecting the facts that carried the greatest weight[2], the Hearing Officer determined that:
 "There is an odd collection of other imponderables, inconsistencies and/or weaknesses surrounding the testimony of [the two underage females] which, combined with [their] incredible witness testimony highlighted above in the instant hearing, leave the undersigned with a lack of confidence in the version of events presented by these [underage female] witnesses."
(Hearing Officer Decision, p.11-12). The Hearing Officer ascertained that "the testimony presented by Officers Karsch and McNally is credible and appropriately dispassionate, with no apparent reason for fabrication or ill motive." (Hearing Officer Decision, p.12).
After a review of the record, this Court finds the decision by the Hearing Officer ordering a four day suspension is supported by reliable, probative, and substantial evidence and that substantial rights of the appellant have not been prejudiced.
Counsel shall submit the appropriate judgment for entry.
[1] It should be clarified that these statements were not taken under oath (See Transcript, p. 42, 57). In addition, Karsch admitted that his police report did not contain any observations about the physical condition of the females, as indicia of being under the influence of alcohol. Karsch states that this omission is due to the fact that the "report was not prepared with the intention of developing probable cause to substantiate a charge of driving under the influence." (See Transcript, p. 48). In addition, Karsch states during cross-examination that the females were not Mirandaized prior to making their statements because they were never considered suspects. (See Transcript, p. 59-60).
[2] See Environmental Scientific Corp. v. Durfee 621 A.2d at 207.